Stephen Kadduk died on December 30th, 1933, leaving a will which was probated on March 6th, 1934, and by which complainant was appointed executor. Decedent left two insurance policies aggregating some $763, payable to his executors or administrators. The policies, however, contained facility of payment clauses providing that the company had the right to make a payment under the policies to any relative by blood or connection of marriage of the insured, and to any person appearing to said company to be equitably entitled to the same by reason of having incurred expense on behalf of the insured for his or her burial, or for any other purpose and the production to the company of a receipt by any or either of *Page 365 
said persons, or of other sufficient proof of such payment to any or either of them shall be conclusive evidence that such payment has been made to the person or persons entitled thereto. Defendant Anna Levitsky, a stepdaughter of deceased, applied for payment of the policies and the amount thereof was paid to her by the insurance company on her certificate of claim in which she stated she was the daughter of deceased and that she had paid the premiums on the policies. Anna Levitsky was not entitled to the insurance money which belonged to the estate, and the executor brought suit against her in the supreme court setting forth the foregoing facts in several counts, including counts alleging that defendant had received and collected the money for the use and benefit of the plaintiff. Judgment was taken against her and on supplementary proceedings it developed that she had used some $315 of the insurance money to pay taxes and assessments for the years 1932 and 1933 to the defendant, the township of Little Falls, on premises owned by her and mortgaged to defendant Singac Building and Loan Association. It is conceded by a stipulation of the facts that the building and loan association had no knowledge of the source from which Anna Levitsky had secured the money used to pay the taxes and assessments, and that just prior to the payment of taxes and assessments the building and loan association notified Anna Levitsky that unless the taxes and assessments were promptly paid, it would institute foreclosure proceedings.
Under these circumstances complainant has brought the present suit praying that he be subrogated to the rights of the township of Little Falls to the extent of the taxes and assessments and that he be declared to have a lien in that amount against the Levitsky premises prior to the lien of the building and loan association mortgage.
The right to subrogation under proper conditions is established in this state, although the precise point in question here does not seem to have been passed upon by our courts. The application of the principles laid down entitle complainant to the relief asked for. The taxes were paid by Anna Levitsky from money rightfully belonging to the estate of *Page 366 
Stephen Kadduk, wrongfully obtained by her and chargeable with a trust that she turn them over to the estate. In Allen v.Allen, 88 N.J. Eq. 575, there was a similar facility of payment clause. The court held that payment thereunder "operated to discharge the company from any further or other liability upon the policy, for the reasons fully discussed in the supreme court in Brooks v. Metropolitan Life Insurance Co., 70 N.J. Law 36, which case was cited by the present chancellor with approval, inPrudential Insurance Co. v. Godfrey, 75 N.J. Eq. 484, which case was subsequently affirmed, on appeal to the court, in77 N.J. Eq. 267." The court further held (at p. 577), "the further result of these adjudications was to declare that the payment thus made by the insurance company in the exercise of its option did not operate ipso facto to confer upon the payee of the fund any legal right of property therein, but constituted the payee a constructive trustee, who held the fund in trust for the benefit of the estate."
A third party such as the building and loan association cannot derive the benefit of such a misappropriation unless he has parted with full value therefor in good faith and without knowledge of the misappropriation. The building and loan association concededly did not act in bad faith and had no knowledge of the misappropriation, but I do not consider that it parted with full value merely because it refrained from a foreclosure because of non-payment of taxes. If complainant be subrogated, the building and loan association will be in no worse position than if the taxes had not been paid, whereas, if subrogation be denied, the building and loan association will be benefited by the cancellation of a lien prior to the mortgage. I cannot see that the building and loan association has parted with any sufficient right to justify a finding that it has parted with full value for the amount of the tax lien.
The rule of law is laid down in Shaler v. Trowbridge,28 N.J. Eq. 595. The court says (at p. 603), "where once a fraud has been committed, not only is the person who committed the fraud precluded from deriving any benefit from *Page 367 
it, but every innocent person is so likewise, unless he has, in good faith, acquired a subsequent interest for value; for a third person, by seeking to derive any benefit under such a transaction, or to retain any benefit resulting therefrom, becomes particeps criminis, however innocent of the fraud in the beginning. 1 Perry Trusts ¶ 172, and cases cited."
A decree will be advised subrogating complainant to the rights of the township of Little Falls as to the taxes and assessments as prayed for in the bill of complaint.